## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH CONNORS, | : | CIVIL NO. 3:CV-07-0097 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| KEVIN FROESE, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Keith Connors ("Connors") filed the instant civil rights complaint on January 18, 2007, alleging that he was the victim of police brutality. (Doc. 1.) Presently before the court are two motions pursuant to FED. R. CIV. P. 12(b)(6) to dismiss the complaint. One motion was filed on behalf of Kevin Froese ("Froese") and Scott Siegler ("Siegler") (Doc. 35), police officers employed by the Borough of Taylor Police Department, Taylor, Pennsylvania. The second motion was filed on behalf police officers Robert Harris ("Harris"), Christopher Mazzucca ("Mazzucca") and Stephen Lowe ("Lowe") (Doc. 41), of Borough of Old Forge Police Department, Old Forge, Pennsylvania. Connors alleges that defendant Froese subjected him to excessive force in the course of his arrest when he "used shotgun bean bags at close range, firing five rounds, inflicting permanent damage." (Doc. 1-2, at 1.) He further alleges that defendants Siegler, Harris and Mazzucca failed to intervene to "prevent brutality used." (Id.) He also alleges that defendant Lowe "did not swear to true statement, perjury." (Doc. 1-2, at 2.) He seeks dismissal of all criminal charges and compensatory and punitive damages. (Id.) For the reasons discussed below, the motions will be granted and the complaint will be dismissed

in its entirety.

## I.   Statement of Facts

According to the affidavit of probable cause, which was executed by defendant Lowe, on December 7, 2006, at 1:39 a.m., defendants Harris and Mazzucca were dispatched to 214 Howard Street, Old Forge, Pennsylvania, to investigate a report of "a man assaulting people with a knife." (Doc. 35-3, at 5.) While *en route*, Harris requested assistance from neighboring police departments. (Id.) Upon arrival at the address, Harris approached the front door of the dwelling and was met by Connors, who was armed with two knives in his right hand and one knife in his left hand. Connors moved toward Harris with the knives, and Harris retreated

Connors exited the residence and started to move down an alley toward Tindale Street. Mazzucca arrived and both he and Harris continuously ordered Connors to stop and drop the knives. "The suspect refused and kept repeating that the officers would have to shoot him." (Id.) Connors then exited the alley onto Tindale Street, where defendant Froese of the Taylor Police Department was positioned in the driver's seat of a police cruiser. (Id.) Connors ran up to the driver's side window of the cruiser and threatened Froese with the knives, causing him to back away and hoist himself over the center console to the passenger side. Defendant Siegler, also of the Taylor Police Department, distracted Connors, which enabled Froese to exit his cruiser armed with a less than lethal shotgun. Connors was again ordered to drop the knives, but he "continued toward Froese repeating 'Go a [sic] ahead and shoot me.' At that time Froese fired 5 rounds from his less than lethal shotgun until the suspect finally complied and dropped the knives, [sic] The suspect was taken into custody." (Id.)

Also of record is an "Assignment Report" filed by Froese which details the events that took place. (Doc. 35-3, at 12.) He first observed Harris and Mazzucca backing out of an alley onto Tindale Street. He then saw Connors with three knives in his hands. Harris and Mazzucca were commanding him to put the knives down. Connors ran up to his patrol car and challenged him to get out of the car. Connors "then placed his back to the left side rear door of [Froese's] patrol car and extended his right arm with one knife in his right hand and placed it up against [Froese's] door window. He then wound up as if to strike [Froese's] door. With this action [Froese] climbed across the console of [his] patrol car. . . ." (Id.) Siegler distracted him and Froese was able to exit the vehicle with his Less-Lethal shotgun. Connors ignored repeated commands to drop the knives. Froese describes the discharging of the five rounds as follows:

> I approached with my Less-Lethal shot gun, chambered a bean bag round and knocked the safety off. I then in a loud and clear voice ordered the male to drop the knives. He refused and stated "Go ahead and shoot me." The male actor then approached me and I fired one (1) round at his right side hip. The actor fell to the road immediately upon the impact but he did not drop the knives. I again in a loud and clear voice ordered him drop the knives. He still refused and I fired a second bean bag round as he was attempting to get back up. The second round also struck the right side of his hip area and again he went down on his left side but still held onto the knives.
>
> I then again ordered him to drop the knives and fired the third and fourth bean bag rounds both of which struck the actor. At this point the actor curled up as if in a fetal position with his hands tucked up under him. He was then ordered to show his hands due to the knives not being visible under his body. Still he refused to comply with the command and a fifth and final bean bag round was fired which also struck his right side. The impact from the fifth round caused him to then roll over onto his right side. With this I was able to see the knives on the road but still in close proximity to his reach. I then placed my

3

> now empty Less-Lethal shotgun on the road and grabbed the actors
> [sic] left hand and pulled him away from the knives.  He was then
> secured into handcuffs and searched for additional weapons.

(Doc. 35-3, at 13-14.)

Thereafter, defendant Lowe interviewed witness Lori Costanzi, who was with Connors at 214 Howard Street at the time of the incident.  "In a written statement to [Lowe] Costanzi described how Connors armed himself with knives and threatened her and their 1 year old baby, Brook Connors.  She stated that Connors was upset because he could not find a bottle of Vodka and he grabbed a knife and started to threaten her while she was holding their daughter Brook. Costanzi stated that she was fearful of what Connors would do and asked her mother to call 911."  (Doc. 35-3, at 5.)

The above conduct resulted in Connors being arrested and charged *via* a criminal information in the Court of Common Pleas of Lackawanna County with the following criminal offenses: five counts of Aggravated Assault based on his attempt to cause serious injury to Lori Costanzi, Brook Connors (one year old), and Officers Harris, Mazzucca and Froese; five counts of Recklessly Endangering Another Person in that he placed or may have placed Lori Costanzi, Brook Connors (one year old), and Officers Harris, Mazzucca and Froese in danger of death or serious bodily injury; five counts of Terroristic Threats against Lori Costanzi, Brook Connors (one year old), and Officers Harris, Mazzucca and Froese in communicating, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another; and, five counts of Simple Assault in that he did attempt to cause or intentionally, knowingly, or recklessly

4

cause bodily injury to Lori Costanzi, Brook Connors (1 year old), and Officers Harris, Mazzucca and Froese.  (Doc. 35-3, at 3, 7-10.)

Immediately following the incident, an investigation into the use of force was conducted by the Lackawanna County District Attorney's Office.  (Doc. 35-3, at 44-48.)  The investigator concluded as follows:

> After a thorough investigation of the circumstances surrounding the police shooting of a knife wielding suspect using less than lethal rounds, it is the opinion of the Lackawanna County District Attorney's Office that the officers involved acted in a professional manner under what could be described as a very serious, dangerous and possibly fatal situation.
>
> It is to the credit of the officers involved that none of the parties involved were seriously injured or killed.  Furthermore, the officers should be commended for the efforts in this incident.

(Doc. 35-3, at 44.)

On April 19, 2007, a proceeding was held in the Court of Common Pleas of Lackawanna County in the matter of <u>Commonwealth of Pennsylvania v. Connors</u>, No. 06 CR 3384, whereat the Commonwealth informed the court that Connors would be entering a plea of guilty to the third count of the criminal information (Aggravated Assault against Harris), and that all other charges would be nol-prossed at the time of sentencing.  (Doc. 35-3, at 16.)  The following plea colloquy took place:

> Q.   Mr. Connors, were you involved in a situation with police officers in which you threatened with a knife?
>
> A.   Yes, Your Honor.

Q.      We talked about your Risperdal and the bipolar situation that
        you've wrestled with. Did that play a factor at that play a factor
        at that time?

A.      That along with alcohol and drug addiction.

Q.      Okay. I've reviewed the affidavit of probable cause. This
        would appear to me to be an intelligent plea.

        I find that Mr. Connors has made a knowing, voluntary and
        intelligent waiver of his right to trial and the other trial rights,
        and I find that his responses to me have been appropriate to the
        questions that I have put to him, and in spite of his statement of
        receiving mental health treatment and being under medication,
        I would like the record to reflect that he appears to be in good
        health, speaking clearly and intelligently and does not appear to
        be under the influence of anything whatsoever.

        So I will accept the plea. I'll direct that a presentence
        investigation be conducted.

(Doc. 35-3, at 22-23.) At that time, Connors also executed a "Guilty Plea Colloquy" (Doc. 35-3,

at 39-42) in which he admitted that "[o]n 12/07/06 [he] caused or attempted to cause bodily

injury to Old Forge Police officers w/a knife." (Doc. 35-3, at 42.)

        His sentencing was held on April 26, 2007. (Doc. 35-3, at 27-37.) At that time, the

sentencing judge summarized the situation as follows:

        [Y]ou are very fortunate that the Taylor police involved in this situation
        here really showed great restraint and great common sense in handling
        the situation. Your situation could have looked like an attempted
        suicide by cop situation. I mean, you were standing there holding two
        knives and the police are approaching you. You know, they would
        have been justified in using lethal force on you but they did not. They
        were patient, all right? They used less than lethal force to use the
        terminology that appears on all the official records and they really took
        you into custody without anyone being harmed and I'm sorry that the

Taylor police are not here, but I do wish to commend them for the fine professional way in which they conducted themselves here.

(Doc. 35-3, at 33.)

## II.    Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a Rule 12(b)(6) motion, the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Further, a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Pension Benefit. Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 48 (2d Cir. 1991)). Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document. See Goodwin v. Elkins & Co., 730 F.2d 99, 113 (3d Cir. 1984)(Becker, J., concurring).

Federal notice pleading rules require the complaint to "give the defendant fair notice of

7

what the . . . claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  <u>See</u> FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Bell Atl. Corp. v. Twombly</u>, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); <u>Victaulic Co. v. Tieman</u>, 499 F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." <u>Montville Twp. v. Woodmont Builders LLC</u>, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting <u>Twombly</u>, ___ U.S. at ___, 127 S. Ct. at 1969).  Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient.  <u>See Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.   Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  <u>See</u> 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d

1199, 1204 (3d Cir. 1996). To establish a civil rights claim, the plaintiff must show a

"deprivation" of a constitutional or statutory right by a person "acting under color of state law."

Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995).

Defendants first seek dismissal of the complaint based upon Heck v. Humphrey, 412 U.S.

477 (1994). In Heck, the Supreme Court ruled that a constitutional cause of action for damages

does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm

caused by actions whose unlawfulness would render a conviction or sentence invalid," until the

plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged

by executive order, declared invalid by a state tribunal authorized to make such determination,

or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87.

Defendants take the following position:

> Mr. Connors previously pled guilty to one count of aggravated assault,
> for which he was charged as a result of the underlying incident, wherein
> he admitted that he threatened police officers with a deadly weapon, he
> is currently incarcerated as a result of the attendant sentence. The
> aggravated assault charge was based on his assault of the responding
> police officers. Pursuant to Heck v. Humphrey, 512 U.S. at 486-86
> [sic], Plaintiff's guilty plea bars any § 1983 claim based on his arrest
> where, as here, judgment for the Plaintiff on his § 1983 claim would
> necessarily imply the invalidity of the underlying conviction. Mr.
> Conners' underlying conviction has not been overturned. Therefore,
> the instant claim is barred and must be dismissed with prejudice.

(Doc. 37, at 5-6; Doc. 41, at 6.)   Inasmuch as Connors seeks to have the charges against him dismissed (Doc. 1-2, at 2), such relief is clearly barred by Heck.  However, with regard to his damages claim based on the excessive use of force, the Third Circuit Court of Appeals held in Nelson v. Jashurek, 109 F.3d 142 (3d Cir. 1997) that the United States Supreme Court decision in Heck did not bar an excessive force claim where the plaintiff's success on the merits would not invalidate the underlying state conviction.  Nelson, 109 F.3d at 145-46.  According to the court, the plaintiff's conviction, which was for resisting arrest, was conclusive that the police officer was justified in using "substantial force" to make the arrest.  Nelson, 109 F.3d at 145. However, whether the force used was excessive had not been foreclosed by the state conviction. Id.  As observed by the court, "there undoubtedly could be 'substantial force' which is objectionably reasonable and 'substantial force' which is excessive and unreasonable."  Id. This rationale compels the court to conclude that Heck does not bar the present action.

Alternatively, defendants argue that the use of force was objectively reasonable under the circumstances.  "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ."  Graham v. Conner, 490 U.S. 386, 395 (1989).  The excessive force inquiry assess whether the officers' actions were "'objectively reasonable' in light of the facts and circumstances confronting them, at the scene at the time of the incident, without regard to their underlying intent or motivation," rather than with the 20/20 vision of hindsight.  Id. at 397; Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004).  Careful attention must be paid "to the facts

10

and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.; see also Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

Defendants argue that based on the "police reports, the information, and affidavit of probable cause, and the guilty plea colloquy and sentencing hearing, these officers' conduct was objectively reasonable under the circumstances." (Doc. 37, at 7-8; Doc. 41, at 9.) Connors contends that "Officer Froese cannot justify shooting the Plaintiff where the Plaintiff was not aggressive nor attempting to hurt any of the said officers. The officers' conduct was not reasonable under the circumstances where the Plaintiff did not attempt to inflict serious bodily injury or any type of injury to any of the said officers. At no point in time did the Plaintiff even make any verbal or physical threats to harm any of the said officers." (Doc. 45, at 4, ¶¶ 22-23.)

Defendant Harris responded to a report of a man assaulting people with a knife. Upon arrival at the scene, Harris entered the residence and was met by Connors, who was holding three knives. Connors moved toward Harris, which caused Harris to immediately retreat. Connors then exited the residence and started to move down an alley toward Tindale Street. Defendant Mazzucca arrived and both he and Harris continuously ordered Connors to stop and drop the knives. He refused to comply. Connors then exited the alley onto Tindale Street, where he encountered defendants Siegler and Froese. Connors ran up to the driver's side window of the police cruiser and threatened Froese with the knives. Defendant Siegler then distracted Connors,

11

which enabled Froese to exit his cruiser armed with a less than lethal shotgun. Connors was again ordered to drop the knives, but he refused. Froese fired five rounds from his less than lethal shotgun until the suspect finally complied and dropped the knives. He was then taken into custody.

Based upon the above, no reasonable juror could find that Froese acted unreasonably under the circumstances. At the time the alleged excessive use of force took place, Conners was continuously wielding three knives and refusing to drop them. No reasonable juror could find that a reasonable officer in Froese's position would not take some action to disarm Conners, in this instance, utilizing a less than lethal shotgun.

We now turn to defendants Harris, Mazzucca and Siegler. Connors alleges that these defendants violated his constitutional rights by failing to prevent the alleged use of excessive force by Froese. "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); See Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207-08. In order to hold these defendants personally liable under 42 U.S.C. § 1983, Connors must show that these officers failed to intervene, and thereby acquiesced, in the alleged unconstitutional use of force. See

12

Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir.1995); See Schwab v. Wood, 767 F. Supp. 574, 591-92 (D.Del.1991). Based upon the above finding that the use of force was not unconstitutional, but rather, reasonable under the circumstances, Connors is unable to state a claim against these defendants.

Lastly, Connors alleges that defendant Lowe committed perjury when he failed to swear to a true statement. (Doc. 1-2, at 2.) It is presumed that Connors is referring to the affidavit of probable cause, which was executed by defendant Lowe. (Doc. 35-3, at 5.) As noted above, Conners must show a deprivation of a constitutional or statutory right by a person acting under color of state law. Mark v. Borough of Hatboro, 51 F.3d at 1141. Connors points to no such deprivation. Further, review of the affidavit of probable cause reveals that there are no procedural irregularities. Defendant Lowe swore, before a Notary Public, that the facts set forth in the affidavit were true and correct to the best of his knowledge. (Doc. 35-3, at 5.)

## IV.   Conclusion

Based on the foregoing, the motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6) (Docs. 35, 41) will be granted and the complaint will be dismissed in its entirety.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court

Dated: February 14, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH CONNORS,                           :        CIVIL NO.  3:CV-07-0097
                          Plaintiff      :
                                         :        (Judge Munley)
              v.                         :
                                         :
KEVIN FROESE, et al.,                    :
                          Defendants  :

## ORDER

**AND NOW**, to wit, this 14th day of February 2008, in accordance with the foregoing memorandum, it is hereby **ORDERED** that:

1. The motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) filed on behalf of Kevin Froese and Scott Siegler (Doc. 35), is GRANTED.

2. The motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) filed on behalf Robert Harris, Christopher Mazzucca, and Stephen Lowe (Doc. 41), is GRANTED.

3. Plaintiff's complaint is DISMISSED in its entirety.

4. Plaintiff's motion for medical records (Doc. 49) is DENIED.

5. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

**BY THE COURT:**

**JUDGE JAMES M. MUNLEY**
**United States District Court**